FILED _____ RECEIVED
_____ ENTERED _____ SERVED ON
COUNSEL/PARTIES OF RECORD

MAR 27 2008

CLERK US DISTRICT COURT
DISTRICT OF NEVADA

BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

DANIELLE MARIE LUCEY,                )        3:04-cv-00637-BES-PAL
                                     )
        Plaintiff,                   )
                                     )        **ORDER**
v.                                   )
                                     )
THE CITY OF RENO, et al.,            )
                                     )
        Defendants.                  )
_____)

Currently before this Court are the Motions for Summary Judgment filed by the Defendants in this matter. Motions for Summary Judgment were filed on March 19, 2007, by Defendant Greg Sawyer (#134), Defendant Dennis Balaam (#138), Defendants City of Sparks, John Dotson and Unnamed Sparks Police Officers One and Two (#139), and Defendant Greg Martin (#140). On April 2, 2007, Defendants City of Reno and Jerry Hoover (#147) and Defendant Michael Lucey (#148) filed Motions for Summary Judgment. Plaintiff Danielle Marie Lucey ("Plaintiff") filed an Opposition to each of these motions (#166, #167, #168, #169, #170) except for the motion filed by Defendant Dennis Balaam. All of the Defendants, except Defendant Dennis Balaam, filed a Reply (#172, #174, #175, #176, #178).

## I. BACKGROUND

This case arises out of a domestic dispute that allegedly went above and beyond the normal course of such disagreements. Plaintiff and Defendant Michael Lucey ("Michael Lucey") were married on January 1, 1997, and during that marriage had two children. On November 12, 1999, Michael Lucey was hired by the City of Reno as a police officer and the

///

the family moved to a single-family residence located at 7650 Badelona Court in Sparks, Nevada.

Beginning in 2001, Plaintiff and Michael Lucey began experiencing marital problems. In the summer of 2002, while Plaintiff and Michael Lucey were still married, Plaintiff began a relationship with a man by the name of David Duran ("Duran"). In August of 2002, Michael Lucey learned of that relationship by reading a letter Plaintiff had written to Duran and then thrown away. According to Plaintiff, "[f]rom the time he found the letter, Michael began threatening, harassing and intimidating both Dave and me in an apparent effort to force David and me to end our relationship." (Opposition to Defendant Michael Lucey's Motion for Summary Judgment (#166) at Exhibit A, p. 2). Plaintiff further stated that despite this, "I refrained from seeking a divorce from Michael immediately, and instead continued to live in the house with Michael and to see David for mental solace and comfort." Id.

After Michael Lucey learned about the relationship between Plaintiff and Duran, Michael Lucey ran a criminal history search on Duran at the Reno police station through NCIC while on duty. The search disclosed that Duran had convictions for DUI and gross destruction of property. Michael Lucey also obtained a booking photo and arrest report of Duran from the Washoe County Sheriff's office. According to Plaintiff, Michael showed her Duran's criminal record and another document modified to incorrectly reflect that Duran was a sex offender and a subject of the Reno Police Department's Repeat Offender Program ("ROP"). Michael Lucey claims, however, that he never created any false documents or told Plaintiff that Duran had a history of sex crimes or was a ROP subject. In addition to accessing Duran's criminal record, Michael Lucey also accessed DMV records on the vehicle jointly owned by Plaintiff and Michael Lucey. Michael Lucey also ran a DMV check on Duran's vehicle. Defendant Greg Martin ("Martin"), Michael Lucey's friend and co-worker, also accessed these DMV records at least once.

In August of 2003, while still a police officer, Michael Lucey obtained a protection order which provided that Duran was not to be within 100 yards of the Lucey residence at 7650 Badelona Court. This protection order was extended until March 18, 2004. In October of

1   2003, during the divorce proceeding between Michael Lucey and Plaintiff, Michael Lucey was
2   ordered to vacate the residence. After Michael Lucey moved out of the Badelona residence,
3   he provided one of his neighbors, Defendant Greg Sawyer ("Sawyer") with a copy of the
4   protection order that Michael Lucey had obtained against Duran. Sawyer was employed with
5   the Washoe County Sheriff's Department at that time. Michael Lucey asked Sawyer to call
6   either him or the police if Sawyer saw Duran around the Badelona residence.

7          On November 7, 2003, Sawyer called the police after seeing a man at the Badelona
8   residence. According to Sawyer, he thought the man was a burglar. However, it turned out
9   the man was Duran, who was taking food to Plaintiff because she was not feeling well. Duran
10  had left the premises by the time the police arrived. On March 15, 2004, Sawyer again called
11  the police, but this time because he saw Duran at the Badelona residence. According to
12  Sawyer, he called 911 because he believed Duran was committing a felony by violating the
13  protection order.

14         After Sawyer called 911, the Sparks police dispatcher called Michael Lucey to obtain
15  information regarding the protection order. In response to an inquiry of whether Duran was
16  armed, Michael Lucey reported to the dispatcher that Duran was known to carry a gun and had
17  been previously escorted off Sparks Justice Court property for being aggressive and violent.
18  Dispatch then informed one of the responding Sparks Police Department officers that the call
19  had been upgraded to a high risk situation and that Duran was known to carry a weapon.
20  When the Sparks police arrived at the residence, they had their guns drawn and one of the
21  officers ordered Plaintiff and Duran out of the house. After exiting the house, Plaintiff was
22  asked to sit on the curb and to remain there. Duran was arrested for violation of the protection
23  order. According to Plaintiff, this incident caused her "gross humiliation and embarrassment."
24  (Opposition to Defendant Michael Lucey's Motion for Summary Judgment (#166) at Exhibit A,
25  p. 7). Plaintiff stated that she was forced "to parade down the street . . . where any neighbors
26  or other persons who might have been present could watch, and they forced me to sit on a
27  curb and told me I was not free to leave for a period of approximately one hour." Id.
28  ///

1    Prior to this incident with the Sparks police, Plaintiff had complained of Michael Lucey's
2  harassing  conduct to Sgt. Gerald Rhodes of the Reno Police Department's Internal Affairs
3  division on September 30, 2003. In addition, Plaintiff alleged that she was being harassed and
4  followed by other members of the Reno Police Department. According to Plaintiff, she "was
5  persuaded that Michael was getting substantial help from other officers in trying to break up
6  my relationship with David and in intimidating me." Id. at p. 3. Plaintiff's affidavit states that
7  "[o]n what seemed to be a regular basis I noticed when I was driving I was followed by officers
8  in Reno Police Department cars." Id. Plaintiff further alleges that on one day she "was pulled
9  over without reason three times by different uniformed Reno police officers." Id. at 4. Further,
10  Plaintiff alleges that Reno police had driven by Duran's house in marked patrol cars and had
11  either honked their horns, waved, or shined a spotlight through the windows. Sgt. Rhodes
12  investigated all of Plaintiff's complaints. (City of Reno and Jerry Hoover's Motion for Summary
13  Judgment (#147) at Exhibit G). At the time of Sgt. Rhodes investigation, Michael Lucey was
14  placed on administrative leave for a different internal affairs matter.

15    According to Sgt. Rhodes, his investigation resulted in a formal letter of reprimand to
16  Defendant Martin for accessing DMV records for non-work related reasons. Id. at p. 2. Sgt.
17  Rhodes stated that the rest of Plaintiff's allegations against Martin "were either unfounded,"
18  or without "sufficient evidence." Id. Sgt. Rhodes further stated that had Michael Lucey not
19  been terminated for different reasons, Sgt. Rhodes would have recommended discipline for
20  Michael Lucey's improper conduct in accessing DMV records and obtaining Duran's criminal
21  records and mug shot. Id. As for Plaintiff's claims of harassment and surveillance by other
22  Reno police officers, Sgt. Rhodes stated he investigated these claims but "was unable to
23  locate any evidence" that they had occurred. Id. at p. 9.

24    Following this, on September 16, 2005, Plaintiff filed an Amended Complaint (#75) in
25  federal court against the Defendants asserting a variety of constitutional and state law claims.
26  In her complaint, Plaintiff alleged three violations of 42 U.S.C. §1983, including a violation of
27  her right to free association, the unlawful seizure of conversations, and unlawful arrest.
28  Plaintiff also listed claims for conspiracy, custom and policy, abuse of process, invasion of

4

1  privacy, battery, trespass, intentional infliction of emotional distress and negligence.  The
2  Defendants have filed motions for summary judgment on all these claims.

3                                              **II. ANALYSIS**

4  **A.    Legal Standard for Summary Judgment**

5            Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers
6  to interrogatories, and admissions on file, together with the affidavits, if any, show that there
7  is no genuine issue as to any material fact and that the moving party is entitled to judgment
8  as a matter of law." Fed. R. Civ. P. 56(c).  The burden of demonstrating the absence of a
9  genuine issue of material fact lies with the moving party, and for this purpose, the material
10 lodged by the moving party must be viewed in the light most favorable to the nonmoving party.
11 Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Martinez v. City of Los Angeles, 141
12 F.3d 1373, 1378 (9th Cir. 1998).  A material issue of fact is one that affects the outcome of the
13 litigation and requires a trial to resolve the differing versions of the truth.  Lynn v. Sheet Metal
14 Workers Int'l Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986); S.E.C. v. Seaboard Corp., 677 F.2d
15 1301, 1306 (9th Cir. 1982).

16           If the moving party presents evidence that would call for judgment as a matter of law
17 at trial if left uncontroverted, then the respondent must show by specific facts the existence
18 of a genuine issue for trial.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).
19 "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party
20 for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not
21 significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted).
22 "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences
23 of which the evidence is reasonably susceptible; it may not resort to speculation." British
24 Airways Board v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978); see also Daubert v. Merrell
25 Dow Pharmaceuticals, Inc., 509 U.S. 579, 596 (1993) ("[I]n the event the trial court concludes
26 that the scintilla of evidence presented supporting a position is insufficient to allow a
27 reasonable juror to conclude that the position more likely than not is true, the court remains
28 free . . . to grant summary judgment.").  Moreover, "[i]f the factual context makes the non-

                                                       5

1   moving party's claim of a disputed fact implausible, then that party must come forward with
2   more persuasive evidence than otherwise would be necessary to show there is a genuine
3   issue for trial." Blue Ridge Insurance Co. v. Stanewich, 142 F.3d 1145, 1149 (9th Cir. 1998)
4   (citing Cal. Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466,
5   1468 (9th Cir. 1987)). Conclusory allegations that are unsupported by factual data cannot
6   defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

7   **B.   Defendant Balaam's Motion for Summary Judgment**

8       Plaintiff's Amended Complaint (#75) alleges several causes of action against Washoe
9   County Sheriff Dennis Balaam ("Balaam"). These include allegations that Balaam engaged
10  in a "Code of Solidarity," through which he established a custom and policy of constitutional
11  violations. According to Plaintiff, "[t]here exists among personnel of the law enforcement
12  communities of the City of Reno, the City of Sparks and the Washoe County Sheriff's Office,
13  an unwritten 'Code of Solidarity.'" (Amendment Complaint (#75) at p. 11). Plaintiff alleges that
14  under this Code of Solidarity a "significant number of sworn officers have agreed, as
15  demonstrated by their conduct, to take actions, whether lawful or unlawful, against any and
16  all persons who in any way, whether lawful or unlawful, invade, transgress against or otherwise
17  act in derogation of the actual and perceived interests of any of the sworn officers." Id.
18  Plaintiff states that it was through this Code of Solidarity that Balaam impaired the free
19  exercise of Plaintiff's constitutional rights. Plaintiff also alleges claims for abuse of process
20  and negligence against Balaam. In his Motion for Summary Judgment (#138), Balaam
21  correctly notes that the Court already dismissed Plaintiff's custom and policy claim against all
22  Defendants in an order dated September 15, 2005. (Order (#74) at p. 9). Moreover, that order
23  recharacterized Plaintiff's negligence claim as one for failure to train and for damages under
24  section 1983. Id.

25      Balaam argues that he is entitled to summary judgment on Plaintiff's claims against him
26  because Plaintiff has provided no evidence to sustain such claims. According to Balaam,
27  "absolutely no facts were discovered or disclosed . . . to support any of the allegations" in
28  ///

6

1 Plaintiff's complaint.  (Defendant Balaam's Motion for Summary Judgment (#138) at p. 7).
2 Plaintiff did not file an opposition to Balaam's Motion for Summary Judgment.

3      Local Rule 7-2(d) provides that "[t]he failure of an opposing party to file points and
4 authorities in response to any motion shall constitute a consent to the granting of the motion."
5 However, "a nonmoving party's failure to comply with local rules does not excuse the moving
6 party's affirmative duty under rule 56 to demonstrate its entitlement to judgment as a matter
7 of law."  See Martinez v. Stanford, 323 F.3d 1178, 1182 (9th Cir. 2003) (citing Fed. R. Civ. P.
8 56).

9      The Court has fully considered Defendant Balaam's Motion for Summary Judgment,
10 the evidence presented, and applicable law.  Balaam has affirmatively demonstrated his
11 entitlement to summary judgment by showing that there is no genuine issue of material fact
12 and he is entitled to judgment as a matter of law as to Plaintiff's claims made against him.  As
13 such, Defendant Balaam's Motion for Summary Judgment (#138) is granted.

14 **C.**    **Defendant Sawyer's Motion for Summary Judgment**

15      The claims alleged against Defendant Sawyer in Plaintiff's Amended Complaint include
16 both allegations of 42 U.S.C. § 1983 violations, as well as various state law claims.  Sawyer
17 has sought summary judgment on all of the claims alleged against him on the basis that "there
18 is no evidence upon which a jury could reasonably find in favor of Plaintiff with respect to any
19 of the claims."  (Motion for Summary Judgment of Defendant Greg Sawyer (#134) at p. 10).

20      1.    Free Association Claim.

21      Plaintiff's first claim against Sawyer is for a violation of Plaintiff's constitutional right to
22 free association under 42 U.S.C. § 1983.  (Amended Complaint (#75) at p. 11).  According to
23 the Amended Complaint, Plaintiff had a constitutional right to associate with Duran and
24 Sawyer, acting under color of state law, violated that right by taking actions which "chilled" that
25 relationship.  Id. at p. 12.

26      To state a claim under 42 U.S.C. § 1983, a plaintiff must prove that there was a
27 deprivation of a right secured by the Constitution or laws of the United States, and that the
28 ///

1    alleged deprivation or violation was committed by a person acting under the color of State law.
2    Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

3        The First Amendment "encompasses a freedom of association right, which includes the
4    freedom of intimate expression and the right to associate with others in activities otherwise
5    protected by the First Amendment." Dible v. City of Chandler, 515 F.3d 918, 929 (9th Cir.
6    2008). According to the Ninth Circuit, "[t]he Constitution protects associations because of their
7    intrinsic value as well as their value as instrumentalities for achieving certain ends." IDK, Inc.
8    v. Clark County, 836 F.2d 1185, 1191 (9th Cir. 1988).  In protecting "certain kinds of highly
9    personal relationships," the United States Supreme Court has most often identified the source
10   of the protection as the due process clause of the Fourteenth Amendment, rather than the
11   First Amendment's freedom to assemble. Roberts v. United States Jaycees, 468 U.S. 609,
12   618 (1984).

13       "The relationships protected by the fourteenth amendment 'are those that attend the
14   creation and sustenance of a family' and similar 'highly personal relationships.'" IDK, Inc., 836
15   F.2d at 1193 (quoting Roberts, 468 U.S. at 618-19). The Ninth Circuit has characterized this
16   type of relationship as one in which "[t]he individuals are deeply attached and committed to
17   each other as a result of their having shared each other's thoughts, beliefs, and experiences."
18   Id.  "The factors relevant in determining whether a particular association can claim the
19   protection of the due process clause are the group's size, its congeniality, its duration, the
20   purposes for which it was formed, and the selectivity in choosing participants." Id.

21       In a previous order entered in this case, the Court stated that it believed "that a dating
22   relationship is one worthy of protection under the intimate personal relationship line of freedom
23   of association cases." (Order (#74) at p. 4). As such, for purposes of this motion, the dating
24   relationship between Plaintiff and Duran was entitled to protection under the fourteenth
25   amendment.

26       Sawyer has moved for summary judgment on this claim on the basis that Plaintiff and
27   Duran had ended their dating relationship at the time Sawyer allegedly violated Plaintiff's
28   constitutional rights.  As such, they had no relationship that was entitled to protection at that

1    time.  Moreover, Sawyer contends that he did not do anything under color of law to deprive
2    Plaintiff of her right to freely associate with Duran.  In her Opposition, Plaintiff states that
3    Sawyer violated her constitutional rights by assisting Michael Lucey in harassing and stalking
4    her. Specifically, Plaintiff alleges that Sawyer's "assistance consisted mostly of eavesdropping
5    on the plaintiff, Danielle Lucey, reporting her telephone conversations to others, and wrongfully
6    triggering her arrest by Sparks police on March 15, 2004." Id.

7         Plaintiff's eavesdropping claim against Sawyer is based on a baby monitor she saw in
8    a window of Sawyer's home. (Motion for Summary Judgment of Defendant Greg Sawyer
9    (#134) at Exhibit 1). According to Plaintiff's deposition, the only personal knowledge she had
10    that Sawyer was allegedly eavesdropping on her telephone conversations was "that they had
11    a baby monitor in their window that then they – I have hearsay knowledge because they told
12    people about it and also, that personal things that I said on my phone, that no one would know
13    about would get reported back to Mike."[1] Id.  Plaintiff has provided no other evidentiary
14    support for her claim that Sawyer was eavesdropping on her conversations.  In fact, in her
15    Opposition she states that "except by inference by coincidence," she cannot "negate Deputy
16    Sawyer's statements" that he did not eavesdrop on Plaintiff.  Thus, Sawyer's evidence that he
17    did not eavesdrop on Plaintiff is uncontroverted.  In addition, the location of a baby monitor in
18    a home with young children is insufficient evidence to warrant an inference that Sawyer was
19    listening in on Plaintiff's telephone conversations over such monitor.  As such, this claim
20    cannot form the basis of Plaintiff's free association violation.

21         Plaintiff also alleges that Sawyer violated her right to free association by wrongfully
22    triggering her arrest on March 15, 2004, when Sawyer called the Sparks police when he saw
23    Duran at the Badelona residence.  This Court finds this claim without merit.  Notably, there
24    was a protection order in place when Sawyer called the Sparks police.  Sawyer did not
25    participate in the alleged arrest, nor did he take any action after he called the police to the

26

27      [1] Both Plaintiff and Sawyer testified that at the time she saw the baby monitor, Sawyer had
young children living in the home. Id. Plaintiff also stated that Sawyer told one of their neighbors, who
28 then told another neighbor, who then told her that Sawyer could hear her phone conversations over the
baby monitor. Id.

1  scene. Second, Plaintiff has not provided any evidence she was arrested on March 15, 2004.
2  Rather, the Sparks police, in securing the scene, had Plaintiff sit on the curb outside of her
3  house. Duran, on the other hand, was later arrested for violation of the protection order.

4  Based on the foregoing, Sawyer is entitled to summary judgment on this claim. Plaintiff
5  has failed to establish any facts to support her free association claim. Moreover, as noted by
6  the Plaintiff in her Opposition, she cannot dispute Sawyer's statement of facts, but, rather,
7  must rely on an "inference" based on "coincidence." However, "[a] mere scintilla of evidence
8  will not do, for a jury is permitted to draw only those inferences of which the evidence is
9  reasonably susceptible; it may not resort to speculation." British Airways Board, 585 F.2d at
10 952. In this case, Plaintiff has not come forward with evidence sufficient to show a genuine
11 issue of material fact and Sawyer is entitled to summary judgment on this claim.

12      2.   Unlawful Seizure of Conversation.

13      In addition to alleging a violation of her right to free association, Plaintiff has also
14 brought a claim against Sawyer for the unlawful seizure of conversation. According to Plaintiff,
15 her "conversations were seized and intercepted by Deputy Sawyer through the use of the
16 remote electronic listening devices that he used to monitor [Plaintiff's] conversation with Mr.
17 Duran." (Amended Complaint (#75) at p. 13). This claim for relief is based on the same facts
18 as Plaintiff's allegation of eavesdropping discussed in the foregoing. As noted in that
19 discussion, Plaintiff's only factual support for this allegation is that she saw a baby monitor in
20 Sawyer's house.[2] Plaintiff has provided no other factual support for this claim. Based on
21 these facts, Plaintiff has failed to produce sufficient evidence to support a claim for unlawful
22 seizure of conversation. As such, Sawyer is entitled to summary judgment on this claim.

23 ///
24 ///
25 ///

26 

27   [2] Plaintiff also stated that she heard from a neighbor that Sawyer had told another neighbor that
     the baby monitor could pick up Plaintiff's telephone conversations. However, double hearsay cannot
28   be considered on a motion for summary judgment. Winkler v. National Union Fire Ins. Co., 930 F.2d
     1364, 1367 n.4 (9th Cir. 1991).

1     3.    Unlawful Arrest.

2          Plaintiff's final constitutional claim against Sawyer is for unlawful arrest. This claim
3     stems from the incident that occurred at the Badelona residence after Sawyer called the
4     Sparks police when he saw Duran at the Badelona residence in violation of a protection order.

5          In order to bring a claim for unlawful arrest, the plaintiff must prove that an arrest
6     occurred and that the arresting officers lacked probable cause or other justification for the
7     arrest. Dubner v. San Francisco, 266 F.3d 959 (9th Cir. 2001). As noted in the previous
8     section, a protection order was in place when Sawyer called the Sparks police department.
9     Moreover, Plaintiff was not arrested at that time. The Sparks police, responding to the call,
10    made Plaintiff and Duran exit the residence, and then made Plaintiff sit on a curb while they
11    processed and secured the scene. Plaintiff has not provided any evidence that she was
12    arrested or that the officers lacked justification for their conduct.

13         Based on the foregoing, Plaintiff has provided no factual support for her claim of
14    unlawful arrest. As such, Sawyer is entitled to summary judgment on that claim.

15    4.    Conspiracy.

16         Plaintiff also alleges that Sawyer engaged in a conspiracy with Michael Lucey and
17    Defendant Martin "under color of lawful authority" for the purpose of committing various "illicit"
18    acts. Specific to Sawyer is the allegation that he engaged in a conspiracy "to monitor personal
19    and telephone conversations between [Plaintiff] and Mr. Duran through the use of electronic
20    eavesdropping devises." (Amended Complaint (#75) at p. 15).

21         "An actionable conspiracy consists of a combination of two or more persons who, by
22    some concerted action, intend to accomplish an unlawful objective for the purpose of harming
23    another, and damage results from the act or acts." Hilton Hotels Corp. v. Butch Lewis
24    Productions, Inc., 109 Nev. 1043, 1048, 862 P.2d 1207, 1210 (Nev. 1993). It appears from
25    Plaintiff's Amended Complaint that the "unlawful objective" in regard to her claim against
26    Sawyer is her allegation that he monitored her conversations with an "electronic
27    eavesdropping devise[]."

28    ///

11

1    Sawyer's Motion for Summary Judgment on this claim is granted.  Plaintiff has failed
2    to produce any evidence in support of this claim for relief.  Specifically, Plaintiff has provided
3    no factual support that Sawyer intended some "unlawful objective." As noted in the foregoing,
4    Plaintiff has provided no evidence that Sawyer eavesdropped on her telephone conversations
5    or triggered her unlawful arrest.  Because she has provided no evidence of an unlawful
6    objective, her conspiracy claim must fail. As such, Sawyer is entitled to summary judgment
7    on this claim.

8        5.    Trespass.

9        Plaintiff's Amended Complaint asserts a cause of action for trespass against Sawyer.
10   Sawyer has sought summary judgment on this claim.  In her Opposition, Plaintiff states that
11   she "does not oppose summary judgment for Deputy Sawyer" on her trespass claim. As such,
12   Sawyer's Motion for Summary Judgment on this claim is granted.

13       6.    Remaining State Law Claims.

14       The remaining state law claims asserted against Sawyer are dismissed pursuant to 28
15   U.S.C. §1367(c).  The Court declines to exercise its supplemental jurisdiction over these
16   claims.

17       Based on the foregoing, Defendant Sawyer's Motion for Summary Judgment is granted
18   as to all federal claims alleged against him.  In addition, he is entitled to summary judgment
19   on the claims of conspiracy and trespass.  All remaining state law claims are dismissed.

20   **D.   Defendants City of Sparks, John Dotson and Unnamed Sparks Police Officers'**
21   **      Motion for Summary Judgment**

22       Plaintiff has asserted various claims against Defendants City of Sparks, John Dotson
23   and Unnamed Sparks Police Officers in her Amended Complaint (#75).[3]  Specifically, Plaintiff
24   alleges a claim for relief against Sparks Chief of Police John Dotson ("Dotson") for unlawful

25

26   _____

27   [3] Plaintiff's Opposition to Defendants City of Sparks, John Dotson and Unnamed Sparks Police
     Officers states that Plaintiff does not oppose summary judgment as to the Unnamed Sparks Police
     Officers. (Opposition (#168) at p. 3). Specifically, Plaintiff states that since the unnamed officers "have
28   not been identified and served . . . summary judgment for those persons and them alone is not opposed
     herein." Id. As such, summary judgement is granted to Defendants Unnamed Sparks Police Officers.

1   arrest, custom and policy, abuse of process, and negligence. The only claim alleged against
2   Defendant City of Sparks is for custom and policy. However, as noted in the foregoing, the
3   Court already dismissed Plaintiff's custom and policy claim against all Defendants in an order
4   dated September 15, 2005. (Order (#74) at p. 9). As such, the Defendant City of Sparks and
5   Defendant Dotson are entitled to summary judgment on that claim.

6       Defendant Dotson argues that he is entitled to summary judgment on the claims made
7   against him because "[d]iscovery did not bear out any of the plaintiff's allegations of
8   misconduct" against him. (Motion for Summary Judgment on Behalf of Defendants City of
9   Sparks, John Dotson and Unnamed Sparks Police Officers (#139) at p. 3). According to
10  Plaintiff, "the crux of the case against John Dotson" is that he was "aware of and encouraged
11  [his] officers to assist each other personally, whether lawfully or otherwise, in disputes against
12  persons who were not members of law enforcement agencies." (Opposition to Defendants
13  City of Sparks, John Dotson and Unnamed Sparks Police Officers Motion for Summary
14  Judgment (#168) at pp. 3-4).

15      1.    Unlawful Arrest.

16      Plaintiff's first claim for relief against Dotson is for unlawful arrest arising from the
17  incident that occurred on March 15, 2004, at the Badelona residence. This incident arose after
18  Defendant Sawyer called the Sparks police department when he saw Duran at the residence
19  in violation of a protection order.

20      In order to bring a claim for unlawful arrest, the plaintiff must prove that an arrest
21  occurred and that the arresting officers lacked probable cause or other justification for the
22  arrest. Dubner, 266 F.3d at 959. As noted when discussing Defendant Sawyer's Motion for
23  Summary Judgment, this claim is without merit because Plaintiff has not provided any
24  evidence that she was arrested on March 15, 2004. Plaintiff was forced to exit her house and
25  to remain seated on a curb while the officers secured the scene. Moreover, the officers had
26  justification for their action because Duran was in violation of a valid protection order at that

27
28

13

time.[4]  Because Plaintiff has not provided any evidence that she was arrested or that the Sparks police acted without justification, summary judgment is appropriate.

Based on the foregoing, Dotson is entitled to summary judgment on this claim.

2.    Abuse of Process.

Plaintiff alleges that Dotson is liable for abuse of process because of the actions taken by the Sparks police department on March 15, 2004. (Amended Complaint (#75) at pp. 17-18). According to Plaintiff, the protection order was "valid in form only" and the Sparks police department should have known that "its purpose had terminated due to changed circumstances." Id. at p. 18.  Further, Plaintiff alleges that Dotson is liable for such conduct "in keeping with the Code of Solidarity." Id.

Defendant Dotson in entitled to summary judgment on this claim.  First, Plaintiff has provided no evidence that the Sparks police department acted unlawfully on March 15, 2004. Plaintiff acknowledges that the Sparks police department did not know of any "defects" in the protection order. Second, Plaintiff has provided no evidence that Defendant Dotson engaged in a "Code of Solidarity" to "use invalid legal process[es] to embarrass, inconvenience and punish" Plaintiff.  (See Amended Complaint (#75) at p. 18). Rather, the uncontroverted evidence proffered by Dotson was that he was unfamiliar with any "Code of Solidarity," and that he had never participated in such a scheme. (Motion for Summary Judgment on Behalf of Defendants City of Sparks, John Dotson and Unnamed Sparks Police Officers (#139) at Exhibit 4).

Because Plaintiff has not provided any evidence to support this claim, Defendant Dotson is entitled to summary judgment.

3.    Negligence.

The final claim asserted against Dotson is for negligence. In the Court's Order of September 15, 2005, the Court recharacterized this claim as one for "monetary damages

---

[4] Plaintiff noted in her Opposition: "Based on the fruits of discovery, no evidence can be offered that the Sparks Police Department or any of its personnel knew of or had reason to know of any defects in the stay-away order against Duran." (Opposition (#168) at p. 6).

1   under section 1983." (Order (#74) at p. 10). According to Plaintiff, Defendant Dotson is liable

2   under this claim because he "acted with deliberate indifference toward [Plaintiff] in failing,

3   refusing and omitting to properly supervise, and to curb misconduct" on the part of unidentified

4   Sparks police officers in their contacts with Plaintiff. (Amended Complaint (#75) at p. 22).

5        "A supervisor can be liable under section 1983 if he 'sets in motion a series of acts by

6   others . . ., which he knew or reasonably should have known, would cause others to inflict the

7   constitutional injury.'" Motley v. Parks, 383 F.3d 1058, 1067 (9th Cir. 2004)(quoting Graves v.

8   City of Coeur D'Alene, 339 F.3d 828, 848 (9th Cir. 2003)). Dotson is entitled to summary

9   judgment on this claim for two reasons. First, Plaintiff has failed to provide any factual support

10  for her contention that the Sparks police department violated her constitutional rights. As

11  noted in the foregoing, her unlawful arrest claim must fail because she was never arrested on

12  March 15, 2004. Second, Plaintiff has failed to provide any factual support that Dotson "set

13  in motion a series of acts" which he knew or should have known would inflict a constitutional

14  injury. The only contention Plaintiff makes in this regard is that Dotson was part of a "Code

15  of Solidarity." However, Plaintiff provides no evidence for this Code of Solidarity and such

16  allegation is directly refuted by Dotson's affidavit. (Motion for Summary Judgment on Behalf

17  of Defendants City of Sparks, John Dotson and Unnamed Sparks Police Officers (#139) at

18  Exhibit 4).

19       Thus, based on the foregoing, the Motion for Summary Judgment on behalf of

20  Defendants City of Sparks, John Dotson and Unnamed Sparks Police Officers is granted.

21  **E.    Defendant Greg Martin's Motion for Summary Judgment**

22       There are four claims alleged against Martin. These include a violation of Plaintiff's

23  right to free association, conspiracy, invasion of privacy and intentional infliction of emotional

24  distress.[5] Martin has moved for summary judgment on all the claims alleged against him

25  ///

26

27       [5] In her Opposition, Plaintiff states that she does not oppose summary judgment on the invasion

28  of privacy claim. (Plaintiff's Opposition to Defendant Greg Martin's Motion for Summary Judgment
     (#169) at p. 6). As such, summary judgment on that claim is granted.

15

1  asserting that "Plaintiff simply has no evidence to support her claims." (Motion for Summary
2  Judgment (#140) at p. 5).

3      1.  Free Association and Conspiracy Claims.

4      As to the free association and conspiracy claims, Martin states that "there is no proof
5  of any actions taken by [him] under color of law." Id.  In Plaintiff's Opposition, Plaintiff states
6  that Martin was a work partner of Michael Lucey and that Martin "understood that [Plaintiff] was
7  a young woman with two small children caught up in a failing and hurtful marital relationship."
8  (Opposition to Defendant Greg Martin's Motion for Summary Judgment (#169) at p. 5).
9  According to Plaintiff, Martin "sided with Officer Lucey [and] [i]n so doing, insofar as obtaining
10 records is concerned, he put himself in the shoes of a state actor." Id.  Specifically, Plaintiff
11 contended that Martin "availed himself to state facilities" for "impermissible purposes." Id.

12     As discussed previously, to recover damages under section 1983, a plaintiff must prove
13 that the defendant deprived the plaintiff of a constitutional right while acting under color of
14 state law. Tatum v. City and County of San Francisco, 441 F.3d 1090, 1094 (9th Cir. 2006).
15 In this case, Plaintiff argues that Martin violated her right to free association. According to the
16 Amended Complaint, the actions taken by Martin included running a vehicle record check on
17 Duran's vehicle and "presumably" taking illicit surveillance photographs of Plaintiff. (Amended
18 Complaint (#75) at pp. 5-7). In addition, Plaintiff states that Martin went with Michael Lucey
19 to the Badelona residence while Duran and Plaintiff were there. Id. at p. 8.  According to
20 Plaintiff, Michael Lucey got physical and Martin "was compelled to restrain" him. Id.

21     As to the last two claims, Plaintiff has provided no factual evidence that Martin was
22 acting under color of state law when he went to the Badelona residence or allegedly conducted
23 surveillance on her.  Further, Plaintiff has failed to provide any evidence that such alleged
24 conduct violated her right to free association with Duran.  According to Plaintiff's deposition,
25 at the time Michael Lucey and Martin went to the Badelona residence, Michael Lucey was still
26 living there. (Deposition of Danielle Marie Fargo, December 12, 2005 attached as Exhibit 1-A
27 to City of Reno and Jerry Hoover's Motion for Summary Judgment (#147)).  Further, neither
28 Michael Lucey nor Martin were in uniform at that time and Martin testified that he was off-duty

16

1  when that event took place. Finally, Plaintiff has not alleged that Martin did anything unlawful
2  while at the Badelona residence. Rather, she asserts that Martin was compelled to restrain
3  Michael Lucey when he began to get physically violent. As for Plaintiff's allegation that Martin
4  was following her, in her deposition she stated that she had no details regarding that alleged
5  surveillance, but, rather, was "under the impression" it was going on.  Id.  In fact, Plaintiff
6  affirmatively stated that she never saw Martin following her. Id. Martin testified that he did not
7  follow Plaintiff, but that he did actually drive by Duran's residence on two separate occasions.
8  (Deposition of Gregory Hunter Martin, January 8, 2007 attached as Exhibit D to City of Reno
9  and Jerry Hoover's Motion for Summary Judgment (#147)). The first time was when he was
10  on patrol and responded to a call about shots being fired from an apartment complex next door
11  to Duran's residence.  Id.  The second time was with his family after they left a dental office
12  down the street from Duran's residence. While driving on Duran's street, Martin saw Plaintiff's
13  car and took a picture.  Id.  Plaintiff has not provided any evidence that either of these events
14  were unlawful or violated her constitutional rights. Moreover, Martin was clearly not acting
15  under color of state law when he took a picture of Plaintiff's car while driving with his family
16  from a dentist appointment. As such, neither of these actions can form the basis for her
17  constitutional claims against Martin.

18  Plaintiff has also alleged that Martin violated her right to free association by running a
19  vehicle record report on Duran's vehicle. Martin was formally reprimanded for this action by
20  the City of Reno police department. Although Martin may have been acting under color of law
21  at the time he ran the vehicle record report on Duran's vehicle, Plaintiff has failed to show any
22  evidence or factual support that the running of such record violated her constitutional right to
23  free association with Duran. In fact, Plaintiff did not learn that Martin had run a vehicle record
24  check on Duran until after the internal affairs investigation began and her dating relationship
25  with Duran was over. (Deposition of Danielle Marie Fargo, January 5, 2007, p. 159, attached
26  as Exhibit A-2 to City of Reno and Jerry Hoover's Motion for Summary Judgment (#147)).

27  Thus, based on the foregoing, Martin's Motion for Summary Judgment as to Plaintiff's
28  free association claim is granted. Furthermore, because his alleged unconstitutional conduct

17

1  was the basis of her conspiracy claim against him, Martin is also entitled to summary judgment
2  on that claim.

3  2.    Intentional Infliction of Emotional Distress Claim.

4     The remaining state law claim of intentional infliction of emotional distress asserted
5  against Martin is dismissed pursuant to 28 U.S.C. §1367(c).  The Court declines to exercise
6  its supplemental jurisdiction over this claim.

7     Based on the foregoing, Defendant Martin's Motion for Summary Judgment is granted
8  as to the section 1983 free association claim, conspiracy claim and the invasion of privacy
9  claim.  The remaining claim of intentional infliction of emotional distress is dismissed.

10 **F.    Defendants City of Reno and Jerry Hoover's Motion for Summary Judgment**

11    Plaintiff has asserted a claim of unlawful custom and policy against the Defendant City
12 of Reno and former Reno Police Chief Jerry Hoover ("Hoover").  (Amended Complaint (#75)
13 at p. 16).  In addition, against Hoover, Plaintiff has asserted claims for abuse of process and
14 negligence.  As noted, the Court has already dismissed the custom and policy claim against
15 all Defendants.  (Order (#74) at p. 9).  In addition, Plaintiff does not oppose granting Hoover
16 summary judgment on the abuse of process claim.  (Opposition to Defendants City of Reno
17 and Jerry Hoover's Motion for Summary Judgment (#170) at p. 6).  As such, the only
18 remaining claim is for negligence against Hoover.

19    In the Court's Order of September 15, 2005, the Court recharacterized Plaintiff's
20 negligence claim as one for "monetary damages under section 1983." (Order (#74) at p. 10).
21 According to Plaintiff, Hoover is liable under this claim because he supported a "Code of
22 Solidarity" in which he "acted with deliberate indifference" toward Plaintiff "in failing, refusing
23 and omitting to properly supervise, and to curb the misconduct" by Michael Lucey and
24 Defendant Martin.  (Amended Complaint (#75) at p. 22).  Specifically, Plaintiff states that
25 Hoover was "aware of and encouraged [his] officers to assist each other personally, whether
26 lawfully or otherwise, in disputes against persons who were not members of law enforcement
27 agencies." (Opposition to Defendants City of Reno and Jerry Hoover's Motion for Summary
28 Judgment (#170) at p. 3).

1       Hoover argues that he is entitled to summary judgment on this claim because there is

2 "no evidence of negligence on his part" and Plaintiff "can point to no wrongful conduct." (City

3 of Reno and Jerry Hoover's Motion for Summary Judgment (#147) at pp. 19-20). Specifically,

4 Hoover's affidavit states that he "never turned a blind eye or encouraged officers to commit

5 unlawful acts." (Affidavit of Jerry Hoover at p. 2, attached as Exhibit F to City of Reno and

6 Jerry Hoover's Motion for Summary Judgment (#147)). Further, Hoover's affidavit affirmatively

7 states that at no time did he encourage, approve, condone or ratify any wrongful conduct by

8 Officer Martin or Michael Lucey. Id. In response, Plaintiff does not provide any evidentiary

9 support for her position, but merely asserts that she "believed she was the victim of a general

10 police practice in which officers informally helped each other out and covered up each other's

11 transgressions." (Opposition to Defendants City of Reno and Jerry Hoover's Motion for

12 Summary Judgment (#170) at p. 5).

13       Based on the foregoing, Hoover's Motion for Summary Judgment is granted. Plaintiff

14 has provided no evidence or factual support that Hoover engaged in misconduct or negligence

15 in this matter. In fact, the evidence to the contrary is uncontroverted. Plaintiff's only factual

16 support for her claim against Hoover is her "belief" that she was the victim of unlawful police

17 practices. This is not sufficient to create a genuine issue of fact.

18       Based on the foregoing, Defendants City of Reno and Hoover's Motion for Summary

19 Judgment is granted.

20 **G.    Defendant Michael Lucey's Motion for Summary Judgment.**

21       Defendant Michael Lucey has moved for summary judgment on the eleven claims for

22 relief asserted against him in Plaintiff's Amended Complaint. These claims for relief include

23 three 42. U.S.C. § 1983 claims as well as various state law claims.

24       1.    Free Association Claim.

25       Plaintiff argues that Michael Lucey's alleged misconduct violated her constitutional right

26 to free association. Specifically, Plaintiff asserts that while acting under color of state law,

27 Michael Lucey engaged in conduct designed to "chill" and disrupt her relationship with Duran.

28 In his Motion for Summary Judgment, Michael Lucey argues that he is entitled to summary

judgment on Plaintiff's constitutional claims because Plaintiff has not presented "any evidence that any of his acts which are alleged to have violated her civil rights were done 'under color of law.'" (Defendant Michael Lucey's Motion for Summary Judgment (#148) at p. 7). Rather, Michael Lucey argues that Plaintiff brought constitutional claims against him solely because at the time of their marital discord Michael Lucey was a police officer. Id. Plaintiff, on the other hand, argues that Michael Lucey was "acting officially as a police officer" when he used "police facilities to run background checks on" Duran. (Opposition to Defendant Michael Lucey's Motion for Summary Judgment (#166) at p. 6).

To sustain a claim under section 1983, a plaintiff must prove that there was a deprivation of a right secured by the Constitution or laws of the United States, and that the alleged deprivation or violation was committed by a person acting under the color of State law. Long, 442 F.3d at 1185. The constitutional right at issue in this matter is Plaintiff's right to freely associate with Duran.[6]

It is not disputed that Michael Lucey was a police officer at the time the alleged events occurred in this case. In addition, Michael Lucey admitted he ran a criminal history search on Duran at the Reno police station through NCIC while on duty. (Deposition of Michael Lucey, January 4, 2007, at pp. 12-14, attached as Exhibit C to City of Reno and Jerry Hoover's Motion for Summary Judgment (#147)). In addition, Michael Lucey admitted that he obtained a booking photo (mug shot) and arrest report of Duran from the Washoe County Sheriff's office while he was on duty. Id. at pp. 12-18. Finally, Michael Lucey admitted that he ran a

///

///

---

[6] Plaintiff's freedom of association claim against Michael Lucey brings up an interesting constitutional question that neither side addressed or briefed. The alleged unconstitutional conduct by Michael Lucey occurred while he was still married to and living with Plaintiff. As such, Plaintiff's freedom of association claim alleges that her then-husband violated her constitutional right to associate with a man with whom she was having an extra-marital affair. As previously noted, the type of relationships protected by the fourteenth amendment's freedom of association are those that attend the creation and sustenance of a family. See IDK, Inc., 836 F.2d at 1193. The Court will not address whether the freedom of association protection applies in an extra-martial situation such as this because the Court finds that Michael Lucey's conduct did not end the relationship between Plaintiff and Duran.

1  registration check on Duran's vehicle. <u>Id.</u> at p. 16 and 112. According to Plaintiff, these
2  actions, as well as overall surveillance and harassment by other police officers, violated her
3  right to free association with Duran.

4          In this case, this Court finds that Michael Lucey is entitled to summary judgment on
5  Plaintiff's constitutional claim of free association. Specifically, Plaintiff has failed to provide
6  evidence that Michael Lucey's misconduct deprived her of her right to free association in this
7  case because she maintained her relationship with Duran despite Michael Lucey's acts. The
8  actions taken by Michael Lucey while acting as a police officer and checking on Duran's
9  records were clearly improper. However, although Michael Lucey may have engaged in
10 improper conduct to garner information about Duran, Plaintiff testified that her relationship with
11 Duran ended because she was no longer in love with him. (Deposition of Danielle Marie
12 Fargo, December 12, 2005, at p. 147-149, attached as Exhibit A-1 to City of Reno and Jerry
13 Hoover's Motion for Summary Judgment (#147)). Further, Plaintiff testified that after her
14 romantic relationship with Duran ended they remained friends. <u>Id.</u> at p. 151. As such,
15 because Plaintiff was able to maintain her relationship with Duran, despite Michael Lucey's
16 misconduct, her constitutional rights were not violated and her freedom of association claim
17 must fail.

18          2.    <u>Unlawful Seizure of Conversation.</u>

19         Plaintiff's claim for unlawful seizure of conversation against Michael Lucey relates to
20 her claim against Defendant Sawyer for eavesdropping on her telephone conversations
21 through the use of a baby monitor. (Amended Complaint (#75) at pp. 12-13). According to
22 Plaintiff, "Michael solicited Deputy Sawyer, who lived two doors away from the Lucey
23 residence in Sparks, Nevada, to keep [Plaintiff] under surveillance . . . principally via the use
24 of electronic listening devices." (Opposition to Defendant Michael Lucey's Motion for
25 Summary Judgment (#166) at p. 20).

26         As noted previously, the only factual support for this allegation is that Plaintiff saw a
27 baby monitor in Sawyer's house and heard from a neighbor that Sawyer said he could hear
28 Plaintiff's conversations. Plaintiff has provided no other evidentiary support for this claim.

1   Moreover, Plaintiff has provided no factual basis for her assertion that Michael Lucey solicited
2   Sawyer to use his baby monitor to listen in on Plaintiff's telephone conversations.  Because
3   Plaintiff has not provided evidence to support her allegations under this claim, summary
4   judgment is appropriate.

5          3.    Unlawful Arrest.

6          This claim against Michael Lucey relates to the incident that occurred on March 15,
7   2004, at the Badelona residence when Defendant Sawyer called the Sparks police department
8   after seeing Duran at that residence.  In regard to this claim, Plaintiff contends that "there is
9   sufficient evidence from which a jury can properly infer that [Michael Lucey] solicited other
10  officers to assist him in his domestic disputes with" Plaintiff.  (Opposition to Defendant Michael
11  Lucey's Motion for Summary Judgment (#166) at p. 21).

12         Plaintiff's argument is flawed, however, because she has failed to provide any evidence
13  that she was arrested on March 15, 2004.  As noted, Plaintiff was ordered to exit the house
14  and to sit on the curb while the Sparks police department secured the scene.  Because
15  Plaintiff was not arrested, she has no claim for violation of section 1983 based on unlawful
16  arrest. As such, Michael Lucey is entitled to summary judgment on this claim.

17         4.    Remaining State Law Claims.

18         In addition to the foregoing constitutional claims for relief, Plaintiff has asserted various
19  state law claims against Michael Lucey.  These remaining state law claims are dismissed
20  pursuant to 28 U.S.C. § 1367(c).

21         Based on the foregoing, Michael Lucey's Motion for Summary Judgment is granted as
22  to all federal claims alleged against him.  All remaining state law claims are dismissed.

23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

## III. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant Dennis Balaam's Motion for Summary Judgment (#138) is GRANTED.

IT IS FURTHER ORDERED that Defendant Greg Sawyer's Motion for Summary Judgment (#134) is GRANTED as to the constitutional claims asserted against him under 42 U.S.C. § 1983, as well as for the claims of conspiracy and trespass.  All remaining claims are dismissed.

IT IS FURTHER ORDERED that Defendants City of Sparks, John Dotson and Unnamed Sparks Police Officers One and Two's Motion for Summary Judgment (#139) is GRANTED.

IT IS FURTHER ORDERED that Defendant Greg Martin's Motion for Summary Judgment (#140) is GRANTED as to the claims for free association, conspiracy and invasion of privacy.  All remaining claims are dismissed.

IT IS FURTHER ORDERED that Defendants City of Reno and Jerry Hoover's Motion for Summary Judgment (#147) is GRANTED.

IT IS FURTHER ORDERED that Defendant Michael Lucey's Motion for Summary Judgment is GRANTED as to all constitutional claims asserted against him.  All remaining claims are dismissed.  The Clerk of the Court shall enter Judgment accordingly.

DATED: This 27th day of March, 2008.

UNITED STATES DISTRICT JUDGE